1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,        )
                                     )     2:04-cr-441-GEB
11                  Plaintiff,       )
                                     )
12       v.                          )     TENTATIVE RULINGS ON MOTIONS
                                     )     IN LIMINE*
13  WILLIAM ALLEN BLOOMFIELD,        )
                                     )
14                  Defendant.       )
    _____)

15

16          In a filing on August 15, 2005, the government gave notice

17  of its intent "to offer evidence [at trial] of Defendant William

18  Bloomfield's prior crimes, wrongs, and acts."  (Notice at 1.)  The

19  government argues the proffered evidence is admissible since it is

20  "inextricably intertwined with the charged offense."  (Id.) Further,

21  the government contends the proffered evidence is admissible since it

22  is "evidence of intent, preparation, plan, knowledge, and absence of

23  mistake pursuant to Federal Rule of Evidence 404(b) [and]

24  demonstrate[s] that the defendant knowingly possessed, received, and

25  distributed material involving the sexual exploitation of minors, to

26

27       *    These tentative rulings are provided to help the
    parties focus their oral argument at the hearing scheduled to
28  commence at 10:30 a.m. on September 2, 2005.

                                    1

1  wit several images and videos identified as child pornography . . . ."

2  (Id.)

3          The government states it intends to offer the following

4  evidence:

5          During the evening of January 17, 2004, the
           defendant, his then-wife Kim, his 13 year old
6          stepdaughter "DOE," and his 18 year old son
           "K.B.," were visiting with relatives. After dinner
7          the conversation turned to a discussion of
           pedophiles and their treatment. DOE became
8          noticeably upset and left the room. DOE then
           confided in K.B. that the defendant had been
9          sexually molesting her for three years. K.B.
           insisted that DOE tell her mother, saying that if
10         she did not, he would.

11         The next evening, January 18, DOE told her
           mother that the defendant had been sexually
12         molesting her since October, 2000. Kim
           immediately took DOE to the police station to
13         report the molestation. She and DOE also collected
           the computers used by the defendant believing that
14         they might contain evidence because, on two
           occasions, she had seen child pornography being
15         downloaded by the defendant (October or November,
           2000,[2] and November, 2003).

16

           [2] During the initial incidents, Kim
17             confronted the defendant.  He told her
               that he was downloading and collecting
18             the pornography so that he could alert
               the download service provider to take
19             the files off.  She demanded that he
               delete the images and he told her that
20             he had.

21         DOE was interviewed twice by law enforcement
           personnel.  She explained that the defendant had
22         been molesting her since she was ten.[1]  DOE
           related that the defendant initiated the
23         molestation in October 2000, telling her that he
           would teach her about sex.  Between October 2000
24         and approximately December 2003, when she was 13
           years old, the defendant had sexual intercourse
25         with DOE numerous times.  He also instructed DOE
           in how to orally copulate him, advising her that
26         it would make her husband happy.  He also
           requested that she perform oral sex on him on
27         numerous occasions.  The defendant instructed DOE
           to keep the molestations a secret because no one
28         would believe her.  He also said that she would

                                    2

never see her grandfather again if she disclosed the molestation.

On one occasion the defendant showed DOE a pornographic movie on the computer.  On another occasion DOE discovered the defendant looking at child pornography on the computer.  DOE told the defendant that it was illegal, and called him a "sicko," but the defendant explained that he was collecting it for the FBI and sending it to them.[4]

[4] DOE described the picture she saw the defendant viewing as a "young girl, 10 years old" without clothes, performing a graphic sexual act.

The government also intends to introduce evidence from DOE's mother [Kim] that on two occasions (October or November, 2000, and November, 2003) she discovered child pornography on the defendant's computer. During the first incident, the defendant insisted that he was gathering evidence to turn it over to the FBI.

(Notice at 2-4.)

The pornography that DOE states Defendant showed her on two separate occasions on a computer and the child pornography that Kim observed him looking at on a computer, and the communications Defendant had with each of these individuals on those occasions, is admissible since it either concerns the indicted crimes or is inextricably intertwined with the indicted offenses.[1]

The government argues that the other proffered evidence in the government's case-in-chief, which for the sake of brevity is characterized as molestation evidence, is inextricably intertwined

---

[1]     Although it is unclear whether one of the occasions described by DOE concerned child or adult pornography, that incident is considered inextricably intertwined with the indicted offenses since she described what she saw in pertinent part as follows: "it was a girl with little bows in her hair and an old guy and they started having sex." (Police Report attached to Notice as 000037.)

3

with the indicted offenses, indicating that it explains Kim's
motivation in taking the computer and DOE to the Sheriff's Department.
However, the molestation evidence is not inextricably intertwined with
the indicted offenses since Kim's motivation in taking the computers
and DOE to the Sheriff's Department "has nothing whatsoever to do with
the factual setting of the [crimes] charged in this case." <u>United
States v. Heidebur</u>, 122 F.3d 577, 580 (8th Cir. 1997).

Since the molestation evidence is not inextricably
intertwined with the indicted offenses, its admissibility is analyzed
under Federal Rules of Evidence 404(b) and 403.[2]  To be admissible
under Rule 404(b), the molestation evidence must be "(1) sufficient
. . . for the jury to find that the defendant committed the
[molestations]; (2) . . . introduced to prove a material issue in the
case; (3) . . . not too remote in time; and (4) if admitted to prove
intent, [it must be] similar to the offense charged." <u>United States
v. Murillo</u>, 255 F.3d 1169, 1175 (9th Cir. 2001) (citation omitted).
"Once relevance is established, the district court should admit the
evidence unless its prejudicial impact substantially outweighs its
probative value." <u>United States v. Johnson</u>, 132 F.3d 1279, 1282 (9th
Cir. 1997).

The government argues that the molestation evidence

> established through DOE's testimony regarding the
> molestations, will be offered to prove
> [Defendant's] knowing and intentional possession
> and receipt of child pornography.  Based upon the
> nature of the anticipated defenses at trial, the
> introduction of prior act evidence is critical to
> establish the defendant's intent to possess images
> depicting minors in sexually explicit conduct.
> The evidence also rebuts any claim that the

---

[2]    Unless otherwise indicated, all references to Rules are
to the Federal Rules of Evidence.

4

1  | defendant was merely conducting research for law
2  | enforcement. The evidence counters any other
   | general claim that the defendant lacked intent or
3  | that an outsider impermissibly used his wireless
   | network to place the images on his computer.

4  (Notice at 5-6.)

5       The essence of the government's position is that the

6  molestation evidence concerning Defendant's sexual exploits of DOE, a

7  child victim, demonstrates his sexual interest in children and has

8  probative value on the material issue that he knowingly possessed and

9  that he knowingly received and/or distributed child pornography.  The

10  government also argues that admission of the evidence and Kim's

11  response to it – when she turned the computers over to the Sheriff's

12  Department – is "the only way for the jury to assess the defendant's

13  anticipated defenses" because otherwise "the jury will be left to

14  speculate why Kim turned the computers over to the Sheriff's

15  Department." (Id. at 5.)  Defendant opposes the government's Rule

16  404(b) motion, construing the government's argument to state "that

17  such molestations are motive for the possession of the child

18  pornography."[3]  (Def.'s Opp'n filed 8/30/05 at 2.)

19       Even though the molestation evidence has some probative

20  value, it still "'may be excluded if its probative value is outweighed

21  by the danger of unfair prejudice. . . .'"  United States v. Merino-

22  Balderrama, 146 F.3d 758, 761 (9th Cir. 1998) (quoting Rule 403).

23  | The Supreme Court has stated that the district
   | courts should balance the probative value of a
24  | given evidentiary item against its prejudicial
   | potential in the following way: "On objection, the
25  | court would decide whether a particular item of
   | evidence raised a danger of unfair prejudice. If
26

27       [3]   The government mentioned "motive" when discussing the
   propositions on which 404(b) evidence is admissible. (Notice at
28  5.)

1        it did, the judge would go on to evaluate the
       degrees of probative value and unfair prejudice
2        not only for the item in question but for any
       actually available substitutes as well. If an
3        alternative were found to have substantially the
       same or greater probative value but a lower danger
4        of unfair prejudice, sound judicial discretion
       would discount the value of the item first offered
5        and exclude it if its discounted probative value
       were substantially outweighed by unfairly
6        prejudicial risk."

7 Id. at 761-62 (citing Old Chief v. United States, 519 U.S. 172, 182

8 (1997)).

9        It is recognized that:

10        Parties always introduce evidence that will do
       damage to the other side's case; that's the very
11        point of a trial. That evidence may decimate an
       opponent's case is no ground for its exclusion
12        under 403. The rule excludes only evidence where
       the prejudice is "unfair"-that is, based on
13        something other than its persuasive weight.

14 United States v. Cruz-Garcia, 344 F.3d 951, 956 (9th Cir. 2003). "As

15 the Advisory Committee Notes to [Rule] 403 explain, unfair prejudice

16 means 'undue tendency to suggest decision on an improper basis,

17 commonly, though not necessarily, an emotional one.'" United States

18 v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).

19        The molestation evidence has the attendant risk of unfair

20 prejudice because it could invoke an adverse emotional response

21 against Defendant.  "[O]nce the district court conclude[s] that the

22 [admission of evidence] raise[s] a danger of unfair prejudice, Rule

23 403 require[s] it critically to 'evaluate the degree of probative

24 value . . . not only for the [evidence] in question but for any

25 actually available substitutes as well.'" Merino-Balderrama, 146 F.3d

26 at 762 (quoting Old Chief, 519 U.S. at 173).

27        The government argues that the molestation evidence has

28 probative value since it shows Defendant's "knowing and intentional

6

possession and receipt of child pornography." (Notice at 6.)
However, the evidence that DOE states Defendant showed DOE child
pornography and the evidence that Kim observed Defendant looking at
child pornography on a computer, and the communications Defendant had
with each of these individuals on those occasions, is sufficient
substitute evidence on the proposition the government seeks to
establish on Defendant's knowledge.[4]

The government also argues that the evidence has significant
probative value on Kim's motive in taking the computers and DOE to the
Sheriff's Department immediately upon learning about the molestations.
But Defendant's opposition proposes an alternative way for the
government to explain why Kim gave the computers to the Sheriff's
Department; specifically, that "she believed that there might be
images of child pornography on the computers" because she previously
saw Defendant looking at child pornography on a computer. (Def.'s
Opp'n at 6.)  Thus, the essence of Defendant's position is that
instead of the government offering the molestation evidence to explain
Kim's motive, the government could introduce, as substituted evidence,
that Kim took the computers and DOE to the Sheriff's Department as a
result of information that DOE told Kim and based upon Kim's previous
observation of Defendant's use of a computer.  This substituted
evidentiary approach is sufficient on the proposition the government
seeks to establish on Kim's motive.

Furthermore, Defendant has construed the government's Rule

---

[4]     The government also contends that the molestation
evidence establishes Defendant's intent. However, the indicted
offenses require the government to prove Defendant knowingly
possessed and/or received child pornography; therefore,
Defendant's intent is not a material issue in this case.

404(b) proffer as also arguing that the evidence is probative on Defendant's motive to possess and receive child pornography.  Although a logical inference can be drawn from the molestation evidence that Defendant has a sexual interest in children and therefore was motivated to have knowingly possessed and received child pornography, the probative value of this Rule 404(b) proposition is substantially outweighed by the danger of unfair prejudice, in light of the indicted offenses.[5]

For all the stated reasons, the molestation evidence is not admissible in the government's case-in-chief on the proffered Rule 404(b) propositions.  Therefore, the Notice is granted and denied in part.

Lastly, the government moves in limine for a ruling that precludes Defendant from making any reference to the District Attorney's Office's decision not to file child molestation charges against Defendant.  However, it has not been shown that this issue is ripe for review in light of the above ruling.

Dated:  August 31, 2005

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge

---

[5]     The probative value of this evidentiary proposition is balanced against the risk that the jury could use this evidence for "something other than its persuasive weight," Cruz-Garcia, 344 F.3d at 956, by using it as propensity evidence.  See Heidebur, 122 F.3d at 581 (stating that the court could not "see any way in which the defendant's abuse of his stepdaughter [was] probative of his knowing possession of [child pornography], other than by establishing a propensity for these kinds of crimes.").